UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NUMBER: 3:14-CV-575-J-34-JBT

APR ENERGY, LLC, a Florida limited
liability company,

        Plaintiff,

    v.

FIRST INVESTMENT GROUP
CORPORATION, a foreign corporation;
and FIRST ENGINEERING GROUP a/k/a
1ST ENGINEERING GROUP, a foreign
corporation,

        Defendants.

_____/

## PLAINTIFF, APR ENERGY, LLC'S VERIFIED MOTION FOR EXPEDITED HEARING AND PRELIMINARY INJUNCTION BARRING DEFENDANTS FROM PURSUING LIBYAN PROCEEDING IN CONTRAVENTION OF ARBITRATION AGREEMENT

The Plaintiff, APR ENERGY, LLC ("APR"), through its undersigned counsel and pursuant to Federal Rule 65 and Local Rule 4.05-06, respectfully moves this Court for an expedited hearing and the issuance of a preliminary injunction barring the Defendants, FIRST INVESTMENT GROUP CORPORATION ("FIGCORP") and FIRST ENGINEERING GROUP a/k/a 1ST ENGINEERING GROUP ("FEG") (collectively, the "Defendants"), who agreed to binding arbitration in Jacksonville, Florida, from pursuing any action against APR in Libya or elsewhere.

This Motion requests expedited relief because, in contravention of their agreement to arbitrate, the Defendants have instructed their attorneys to file a coercive action in Libya to prevent GENERAL ELECTRICITY COMPANY OF LIBYA ("GECOL"), an entity with whom APR has

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

a significant contractual relationship, from making payments to APR. Should that occur, APR's ability to provide power generation facilities within Libya will be severely compromised, directly impacting that country's stability. In support of this Motion, APR states as follows:

## I. BACKGROUND

1.      APR is a global leader in the provision of mobile power plants for large-scale electricity needs in cases of emergency, energy shortages, natural disasters, and in developing countries in need of power throughout the world, including the country of Libya ("Libya").

2.      FIGCORP, and its subsidiary FEG, represented that FEG had extensive knowledge in the area of energy production and distribution, as well as experience regarding the administrative, ministerial, procedural and government procurement processes of various administrative government agencies in Libya.

3.      On or about February 1, 2013, APR and the Defendants entered into a Services Agreement with an effective date of April 1, 2012 (the "Agreement"), pursuant to which the Defendants agreed that FEG would provide APR certain specified consulting services (the "Services") with respect to APR's establishment and operation of a thermal power plant project to be located in Libya (the "Project"). (*A true and correct copy of the Agreement is attached to the Complaint as Exhibit "A."*)

4.      Pursuant to Paragraph 4(a) and Schedule B of the Agreement, FEG's remuneration for the Services would, subject to Defendants' compliance with the Agreement, constitute "8% of the actual amount paid to APR by [GECOL]" as part of a multi-million dollar power generation relationship between APR and GECOL.

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com
MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

5.      However, Defendants repeatedly breached and failed to satisfy their obligations under the Agreement, including through FEG's substandard and unsatisfactory performance of the Services, including but not limited to:

(a)      Defendants did not demonstrate extensive knowledge or expertise required throughout the bidding, contractual, registration, taxation, and installation processes in the areas of energy production and distribution as required under the Agreement;

(b)      Defendants did not exhibit experience or expertise regarding the administrative, ministerial, procedural, and government procurement processes of various administrative government agencies in Libya as required under the Agreement;

(c)      Defendants failed to provide local advice and/or otherwise facilitate and manage the procurement of any and all licenses and/or permits as required under the Agreement;

(d)      Defendants failed to provide continuous customer relations services as necessary to insure the processing and timely payment of APR's invoices as required under the Agreement;

(e)      Defendants failed to facilitate timely meetings and negotiations between APR and its customer as required under the Agreement;

(f)      Defendants failed to provide reliable and professional operations/project management support services as required under the Agreement;

(g)      Defendants failed to provide adequate support services with respect to the provision of services and delivery of goods to APR as required under the Agreement;

(h)      Defendants failed to properly assist APR in connection with payment of any and all local duties, taxes and fees as required under the Agreement;

3

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com
MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

(i)     Defendants failed to arrange work permits for all APR employees, including project work permits, as required under the Agreement;

(j)     Defendants failed to properly advise APR to ensure that the employment contracts utilized by APR complied with Libyan labor laws as required under the Agreement;

(k)     Defendants failed to make the necessary arrangement for medical examinations required for work permit holders as required under the Agreement;

(l)     Defendants failed to provide local Arabic speaking drivers and security personnel who also spoke English for APR senior management as required under the Agreement;

(m)     Defendants failed to provide administrative support for APR personnel that was adequate for the size and scope of the project as required under the Agreement;

(n)     Defendants failed to make the necessary accommodations for all APR support personnel, including provision of guards and cleaners, as required under the Agreement;

(o)     Defendants failed to provide assistance with payment of utility bills and maintenance of the accommodations for all APR support personnel as required under the Agreement;

(p)     Defendants failed to provide the journey management planning for all APR staff as required under the Agreement;

(q)     Defendants failed to make the necessary arrangements for Internet access as required under the Agreement;

(r)     Defendants failed to properly advise APR regarding insurance for ground staff, including arranging for local contractor liability insurance for the GECOL workers as required under the Agreement;

SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com
MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

(s)     Defendants failed to arrange for the payment of all duties, levies, and taxes assessed by the Libyan Tax Office on APR personnel in country, including INAS contributions (social security fund), as required under the Agreement;

(t)     Defendants failed to provide emergency response procedures for the sites in Libya generally as required under the Agreement;

(u)     Defendants failed to provide advice to APR regarding safety, security and well-being of APR personnel while in country as required under the Agreement;

(v)     Defendants failed to make the necessary arrangements for transportation of the equipment from the port to the site as required under the Agreement;

(w)     Defendants failed to provide site security at the Project as required under the Agreement; and

(x)     Defendants failed to adequately arrange for appointments and in country marketing and support as required under the Agreement.

6.     Shortly after the breaches enumerated in paragraph 5 above occurred, APR contacted Defendants and requested to meet with Defendants to discuss Defendants' failure to perform the Services as required under the Agreement, to attempt to correct and resolve the issues raised by APR in connection with Defendants' substandard performance of the Services under the Agreement, and to reach an agreement on the appropriate fees due by APR to Defendants based upon the value of the Services provided by Defendants under the Agreement.

7.     Instead, the Defendants, by way of their solicitors, Dallas & Co., sent APR correspondence dated March 31, 2014 (the "Letter") claiming that due to APR's alleged breach of the Agreement for non-payment, which APR adamantly denies, the Defendants were commencing arbitration proceedings in accordance with the Agreement, as well as threatening to initiate

SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

litigation in Libya "for an order to prevent the payment of any further sums to [APR] by GECOL until this dispute is resolved" (the "Libyan Proceeding"). (*See the Letter attached to the Complaint as **Exhibit "B."***)

8.  The Defendants' reference to arbitration proceedings is a ruse, as they have no intent to arbitrate, have not commenced arbitration proceedings in accordance with the Agreement, and the Libyan Proceeding constitutes a direct breach of the Agreement.

9.  Specifically, pursuant to Paragraph 10 of the Agreement, "**any dispute which arises under this Agreement shall be resolved by submittal to binding arbitration** pursuant to the International Arbitration Rules of the International Center for Dispute Resolution of the International Chamber of Commerce (the 'ICC Rules')" (the "Arbitration") (emphasis added). (*See* Agreement, ¶ 10.)  The Arbitration shall, *inter alia*, be conducted in Jacksonville, Florida, and be governed by Florida substantive law. (*Id.* ¶ 10(b).)

10.  Pursuant to the Agreement, an action for a preliminary injunction may be filed in a court of competent jurisdiction, but only "if necessary to obtain legal measures intended to protect [the parties'] rights prior to or during the arbitration . . . provided that, such relief: (i) is limited to that which is required *to prevent imminent damage to a party*; and (ii) does not resolve the merits or substance of such Dispute." (*Id.* ¶ 10(h) (emphasis added).)

11.  Consequently, and pursuant to the clear, unambiguous and binding terms of the Agreement, the Defendants' instructions to attorneys in Libya to commence the Libyan Proceeding—seeking to prevent further payments from GECOL to APR—constitutes a direct breach of the Agreement.  In particular, Florida law governs the Agreement, and it does not permit

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

the issuance of a preliminary injunction to withhold third-party payments, especially where the underlying dispute is about the payment of money.[1]

12.     The Defendants' Libyan Proceeding is a transparent attempt to obtain a coercive measure intended to cause substantial harm to APR, force unwarranted payments, and avoid the Arbitration.  If Defendants are permitted to proceed with the Libyan Proceeding and obtain the relief they request, APR will be unable to perform its obligations to GECOL, its business interests and reputation in Libya will be permanently and irreparably damaged, and ultimately, the Libyan recipients of APR's power will suffer the consequences.

13.     As such, APR has filed this action requesting that the Court, *inter alia*: (a) enter an Order compelling the Defendants to submit the dispute which Defendants have threatened to litigate in Libya to binding arbitration, as agreed upon in the Agreement, and (b) enjoin the Defendants from pursuing the Libyan Proceeding.  APR is now entitled to a preliminary injunction barring the Defendants from pursuing the Libyan Proceeding, or any such proceeding elsewhere.

## II. MEMORANDUM OF LAW

**A.     Entry Of A Preliminary Injunction To Safeguard APR's Arbitration Rights Is Proper and Warranted Under The New York Convention.**

14.     The entry of a preliminary injunction compelling the Defendants to immediately cease, desist and abandon the Libyan Proceeding, and barring any such proceeding, is proper and

---

[1] At the risk of stating the obvious, Florida law does not countenance the maintenance of an action for preliminary injunction to bar payments of funds to which a right is asserted.  *See, e.g., De Leon v. Aerochago, S.A.*, 593 So. 2d 558, 559 (Fla. 3d DCA 1992) ("First, appellees have asserted a contingent, unproven and disputed claim for money damages.  This is not a sufficient right or interest.  'Injunctive relief may not be used to enforce money damages, or to prevent any party from disposing of assets until an action at law for an alleged debt can be concluded.'  Second, there is no likelihood of immediate and irreparable harm because the appellees have an adequate remedy at law.  The appellees have repeatedly insisted that there is nothing in evidence that the money can be replaced, unless the funds were impounded.  Since only money is at stake, it can be easily replaced.  The appellants have an adequate remedy at law.") (citations omitted).

7

SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

warranted under 9 U.S.C. § 206.  Pursuant to 9 U.S.C. § 206, "**[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement** at any place therein provided for, whether that place is within or without the United States." (emphasis added).  In effect, 9 U.S.C. § 206 creates a cause of action in federal court "to compel arbitration" in accordance with the terms of the subject arbitration agreement.  *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262-63 (11th Cir. 2011).

15.     Similarly, this Court, which has jurisdiction over this action under 9 U.S.C. § 203, is vested with the authority to issue injunctive relief attendant to its power to compel an arbitration.  *See Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) ("We hold that entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to § 206."), *cert. denied*, 500 U.S. 953 (1991); *accord Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364-65 (5th Cir. 2003) ("'[F]ederal courts have the power to enjoin persons subject to their jurisdiction from prosecuting foreign suits.'  Moreover, '[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.'  Under the New York Convention and Chapter 2 of the Federal Arbitration Act (the Convention's implementing legislation) federal courts maintain jurisdiction to hear cases like this.  [T]here is nothing in the Convention or implementing legislation that expressly limits the inherent authority of a federal court to grant injunctive relief with respect to a party over whom it has jurisdiction.  Given the absence of an express provision, we discern no authority for holding that the New York Convention divests the district court of its inherent authority to issue an anti-suit injunction.") (footnotes omitted).

SHUTTS & BOWEN LLP

1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

16.     Moreover, APR's right to arbitration is beyond reasonable dispute.   In fact, Defendants acknowledged in their Letter that the parties' dispute must be resolved through arbitration.   Nonetheless, they attempt to eviscerate that obligation in the same Letter by suggesting a right to maintain the Libyan Proceeding.   The Court must enjoin that proceeding in aid of its authority to compel arbitration.

17.     The Eleventh Circuit Court of Appeals has explained that "[i]n deciding a motion to compel arbitration under the Convention Act [9 U.S.C. § 201-208], a court conducts 'a very limited inquiry' . . . [and a] **district court must order arbitration unless the four jurisdictional prerequisites are not met . . . or one of the Convention's affirmative defenses applies**." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-1295 (11th Cir. 2005) (emphasis added) (citations and footnote omitted); *see also Lindo*, 652 F. 3d at 1275.   The four (4) jurisdictional prerequisites discussed by the Eleventh Circuit are the following: (a) there must be an agreement in writing within the meaning of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention");[2] (b) the agreement provides for arbitration in the territory of a signatory of the New York Convention; (c) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (d) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.   *See Bautista*, 396 F.3d at 1294-1295 n.7.

18.     All of the jurisdictional prerequisites required by the Eleventh Circuit are satisfied in the present action.   <u>First</u>, the Agreement between the parties is a written agreement within the meaning of the New York Convention.   For instance, pursuant to Article II(2) of the New York Convention, "[t]he term 'agreement in writing' shall include an **arbitral clause in a contract** or

---

[2]   The full English text of the Convention is available at 21 U.S.T. 2517, 1970 WL 104417.

SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

an arbitration agreement, signed by the parties or contained in an exchange of letter or telegrams." (emphasis added). The arbitration clause contained in the Agreement at Paragraph 10 (the "Arbitration Clause") is within the scope of Article II(2) of the New York Convention because it is a written arbitration agreement between the parties. *See Bautista*, 396 F.3d at 1300-01.

19.   <u>Second</u>, the Arbitration Clause provides for arbitration in the territory of a signatory of the New York Convention. Specifically, the Arbitration Clause requires the Arbitration to take place in the United States, and more particularly in Jacksonville, Florida. The United States has been a signatory to the New York Convention since September 30, 1970, when it ratified the Convention. *Id.* at 1296 (noting that the United States acceded to the Convention in 1970).

20.   <u>Third</u>, the Agreement arises out of a contractual relationship that is considered to be commercial in nature; namely, a contract between private parties for services in exchange for payment. It is well-established that a "contract for services is commercial in nature." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 875 (9th Cir. 2000) ("A contract for services is plainly commercial in nature.").

21.   <u>Fourth</u>, neither Defendant to the present action is an American citizen (both are foreign entities), and the commercial relationship between the parties relates to APR's power generation activities in Libya. Consequently, the four (4) jurisdictional prerequisites are clearly satisfied in this case.

22.   The Court must subsequently determine whether any of the New York Convention's affirmative defenses is applicable herein. Article II(3) of the New York Convention requires "that courts enforce an agreement to arbitrate unless the agreement 'is **null and void, inoperative or incapable of being performed**.'" *See* the New York Convention, art. II(3) (emphasis added). The Defendants have not and cannot submit that any of the New York

10

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

Convention's affirmative defenses apply. As noted, they already acknowledged that the parties' dispute must be resolved through arbitration.

23.     Accordingly, APR is substantially likely to obtain an order compelling arbitration on the merits of this action. Nonetheless, such an order would be rendered meaningless if in the meantime Defendants are allowed to proceed with the Libyan Proceeding to block APR's receipt of payments from GECOL. Such relief would clearly harm APR and directly interfere with its ability to perform its power generation obligations in Libya. Thus, the consequences are not merely an irreparable harm to APR, but also a further destabilizing force to Libya during the upcoming summer months, when power consumption is at its highest. An injunction will not prejudice the Defendants, as they will be able to pursue their arguments against APR through arbitration. The enforcement of an arbitration agreement is also in the public interest, and a remedy at law is unavailable to bar Defendants from proceeding otherwise.

24.     Moreover, pursuant to Paragraph 10(h) of the Agreement, Defendants agreed to the granting of injunctive relief in favor of APR without the necessity of it satisfying the usual requirements of a preliminary injunction. (*See* Agreement, ¶ 10(h) ("In the event that the Service Provider or the Principals shall commit or cause to commit a breach of this Agreement (including but not limited to the provisions of Sections 5-8 hereof), then in such event, each of the Service Provider and the Principals hereby consents to the granting of a temporary or permanent injunction against it, him or her by any court of competent jurisdiction prohibiting it, him or her from violating any provision of this Agreement, without the necessity of having to post any bond therefor. . . . Each of the Service Provider and the Principals further agrees that APR will not have an adequate remedy at law in the event of any breach by the Service Provider or the Principals and that APR will suffer irreparable damage and injury if any of the Service Provider or the Principals breaches any of the provisions of this Agreement.").)

SHUTTS & BOWEN LLP
11
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI     FORT LAUDERDALE     WEST PALM BEACH     ORLANDO     TAMPA     TALLAHASSEE     AMSTERDAM

**B.**  **Entry Of A Preliminary Injunction To Safeguard APR's Arbitration Rights Is Proper and Warranted Under The Florida Arbitration Code.**

25.     In addition or as an alternative to the New York Convention, injunctive relief is proper and warranted in accordance with the Florida Arbitration Code (Florida Statutes §§ 682.01-682.22).  Florida Statutes § 682.03(1) is applicable herein because the Arbitration Clause is subject to the Code, and the Arbitration Clause provides for arbitration in Florida.

26.     Pursuant to Florida Statutes § 682.03(1), "[a] party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof."  In accordance with the statutory language, when determining the suitability of an order compelling arbitration pursuant to section 682.03(1), courts are restricted to consider the following three (3) factors: (a) whether a valid written agreement exists; (b) whether an arbitrable issue exists; and (c) whether the right to arbitration was waived. *See Harling v. ADO Staffing, Inc.*, No. 3:13–cv–1113–J–34JRK, 2014 WL 1410519, at *3 (M.D. Fla. Feb. 21, 2014) (citing *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)).  All three (3) factors are met herein because the Arbitration Clause constitutes a valid and enforceable agreement to arbitrate any and all disputes arising from the Agreement, and APR has not waived its right to arbitrate under the Agreement.

27.     <u>First</u>, the Arbitration Clause constitutes a valid and enforceable arbitration agreement under Florida law.  Indeed, the Florida Arbitration Code does not even require that an arbitration agreement be signed to be enforceable. *See FI-Evergreen Woods, LLC v. Robinson*, No. 5D12–1742, 2013 WL 5493462, *3 (Fla. 5th DCA Oct. 4, 2013).  Here, the Arbitration Clause is valid and enforceable because it was agreed to by all parties.  Further, as noted above, the

12
SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

Defendants reaffirmed the validity and enforceability of the Clause in their Letter. As such, any claim by the Defendants as to the unenforceability of the Arbitration Clause would be unavailing.

28.    <u>Second</u>, an arbitrable issue exists because there is an acknowledged dispute between the parties. In particular, the parties disagree as to the Defendants' entitlement to payment under the Agreement. Pursuant to the Arbitration Clause, such a disagreement must be resolved by way of binding arbitration. (*See* Agreement, ¶ 10 (noting that "any dispute which arises under this Agreement shall be resolved by submittal to binding arbitration . . . .").)

29.    <u>Third</u>, APR has not waived its right to demand arbitration. A right to arbitration is waived when: (a) under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and (b) that party has in some way prejudiced the other party. *See Harling*, 2014 WL 1410519, at *5. Here, there is be no basis to find that APR has waived its arbitration rights.

30.    Accordingly, as noted above, APR is likely to prevail on the merits of this action, and all other factors require injunctive relief to safeguard APR's arbitration rights.

**C.    Entry Of A Preliminary Injunction To Safeguard APR's Arbitration Rights Is Proper and Warranted Under Anti-Suit Injunction Principles.**

31.    In addition or as an alternative to the foregoing arguments, injunctive relief is also proper under the anti-suit injunction principles applicable to this case. The purpose of anti-suit injunctions is not limited to enjoining foreign actions in favor of domestic litigation. On the contrary, federal courts have frequently enjoined foreign actions in favor of domestic arbitrations pursuant to an agreement between the parties. *See Suchodolski Assoc., Inc. v. Cardell Fin. Corp.*, Nos. 03 Civ. 4148, 04 Civ. 5732, 2006 WL 3327625, *2-4 (S.D.N.Y. Nov. 16, 2006) (granting motion for anti-suit injunction in favor of arbitration against plaintiffs who had filed a parallel action in Brazil); *see also Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems*

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

*Information Technologies, Inc.*, 369 F.3d 645, 653-55 (2d Cir. 2004) (affirming the district court's order issuing an anti-suit injunction in favor of arbitration against defendants who had filed a civil action in Brazil).  In this case, the Court should arrive at a similar result and issue an anti-suit injunction requiring the Defendants to immediately cease, desist and abandon the Libyan Proceeding because the parties have agreed that any and all disputes arising from the Agreement should be resolved by way of binding arbitration.

32.     It is well established that the issuance of anti-suit injunctions is not governed by the traditional preliminary injunction analysis. *See E. & J. Gallo Winery v. Andina Licores, S.A.*, 446 F.3d 984, 990 (9th Cir. 2006) (explaining that "[t]he suitability of an anti-suit injunction involves different considerations from the suitability of other preliminary injunctions").  Instead, the Court need only address whether "the factors specific to an anti-suit injunction weigh in favor of granting the injunction." *Id.* at 990-91.

33.     The issuance of an anti-suit injunction is proper when the following threshold factors are met: (a) the parties are the same in both the foreign and domestic lawsuits; and (b) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *See Canon Latin Am., Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 601 (11th Cir. 2007); *accord S.E.C. v. Pension Fund of America, L.C.*, 613 F. Supp. 2d 1341, 1344 (S.D. Fla. 2009).  These threshold factors are met here because (a) the parties to this action, the Libyan Proceeding, and ultimately to Arbitration, are APR, a Florida limited liability company, and the Defendants, FIGCORP and FEG, St. Vincent and Libyan companies, respectively, and (b) resolution of the case before this Court, and ultimately the Arbitration, is dispositive of the action to be enjoined.  That is, the Arbitration between the parties will be dispositive of each and every dispute arising from the Agreement.

SHUTTS & BOWEN LLP
14
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

34.     Once the threshold factors are met, APR must show that the following additional equitable factors are also met and that issuance of an anti-suit injunction would: (a) protect the enjoining court's jurisdiction and policy, and (b) satisfy concerns for international comity. *Id.* at 1345. Other courts have also considered factors as to judicial efficiency and economy, such as whether the foreign action is vexatious to the movant. *See Alstom Chile, S.A. v. Mapfre Compania de Seguros Generales Chile S.A.*, No. 13 Civ. 2416, 2013 WL 5863547, *4 (S.D.N.Y. Oct. 31, 2013) (granting petition to compel arbitration and issuing anti-suit injunction in favor of arbitration against defendant who had filed a parallel civil action in Chile) (*citing China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987)).

**(a)     The Parties Are The Same in Both Actions.**

35.     The parties to the present action, and ultimately to the Arbitration, are the same as the parties to the Libyan Proceeding; namely, APR and the Defendants. Therefore, the first factor is fully satisfied in this case and needs no further consideration.

**(b)     Resolution Of This Case Disposes Of The Libyan Proceeding.**

36.     Resolution of the case before this Court, and ultimately before the Arbitration, will be dispositive of all issues in the Libyan Proceeding. In particular, since the parties agreed to resolve their disputes through arbitration, the Libyan Proceeding is unauthorized and in breach of the Agreement. A finding in this regard will be a part of this action, as APR is seeking a permanent injunction barring Defendants from pursuing the Libyan Proceeding and any such proceeding other than through the Arbitration. In other words, to the extent Defendants claim to be entitled to any relief from APR (including the relief they seek in Libya), that relief must be obtained in the Arbitration.

37.     In *Canon*, the Eleventh Circuit construed the "dispositive" prong to mean that resolution of the case in the enjoining court must "**settle or finish the dispute**." *Canon*, 508 F.3d

at 601 n.8 (emphasis added).  The Arbitration to be compelled in this action will "settle or finish the dispute" underlying the Libyan Proceeding because said dispute arises from the Agreement, and pursuant to the Arbitration Clause, any and all disputes arising from the Agreement must be resolved by way of binding arbitration.  Again, if Defendants claim that Florida law (which governs the Agreement) permits them to obtain a preliminary order blocking GECOL from paying APR, they must prove that in the Arbitration.  Accordingly, resolution of this action is dispositive of the Libyan Proceeding.

**(c)**     **Additional Equitable Factors Bolster The Need For An Anti-Suit Injunction.**

38.     Because APR has overcome the threshold factors for the issuance of an anti-suit injunction, the Court must next analyze additional factors of equity and international comity to determine whether the issuance of an anti-suit injunction is proper.  *See Alstom*, 2013 WL 5863547, at *4.

39.     Maintenance of the Libyan Proceeding is a direct and egregious threat to this Court's jurisdiction and United States public policy favoring arbitration.  To illustrate, in *Paramedics*, the court affirmed the district court's issuance of an anti-suit injunction in favor of arbitration because, *inter alia*, "the foreign proceeding threatens a strong public policy [and] the jurisdiction of the domestic forum."  *Paramedics*, 369 F.3d at 654 (also noting that "[t]he federal policy favoring the liberal enforcement of arbitration clauses (as discussed above) applies with particular force in international disputes.").  Similarly, in this case the issuance of an anti-suit injunction against the Defendants is proper and warranted to protect this Court's unquestionable jurisdiction and public policy favoring the enforcement of arbitration agreements.

40.     In *Alstom*, the court observed that "requiring Plaintiffs to litigate the same issues simultaneously on two continents would, in light of the mandatory arbitration provision, be vexatious to Plaintiffs."  *Alstom*, 2013 WL 5863547, at *4.  In the same vein, forcing APR to

SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM

litigate in Libya, while at the same time taking part in the mandatory Arbitration in Jacksonville, Florida, would be vexatious to APR.

41.     Finally, although it is well-established that "international comity concerns must be weighed" before issuing an anti-suit injunction, "those concerns do not tip the scales against an injunction" when the parallel foreign "litigation is an example of interdictory litigation designed to interfere with the proceedings in this Court and to evade this Court's judgments." *Pension Fund of Am.*, 613 F. Supp. 2d at 1346.  In the present action, where it is mandatory that the parties submit any and all disputes arising from the Agreement to binding arbitration, the Libyan Proceeding can have no other purpose but to interfere with the Arbitration and this Court's right to compel arbitration.  The Libyan Proceeding is a transparent attempt to obtain a coercive measure intended to cause substantial harm to APR and force unwarranted payments before the arbitral tribunal enters an award.  As such, concerns for international comity cannot prove dispositive when the Defendants are blatantly circumventing their obligation to submit their dispute against APR to mandatory arbitration in Jacksonville, Florida, in favor of an interdictory litigation in a more favorable forum.

**D.     Notice to Defendants.**

42.     The requested preliminary injunction is available to APR upon notice to Defendants. *See Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302 (5th Cir. 1978) ("Rule 65(a) does not require service of process.  The Rule does require notice to the adverse party.").

43.     Pursuant to Paragraph 25 Agreement, notice to Defendants is being provided to the following addresses via overnight service and/or via hand-delivery, as well as via e-mail:

> First Investment Group Corporation
> C/O PO Box 5509
> Casestand 1211

SHUTTS & BOWEN LLP
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com
MIAMI   FORT LAUDERDALE   WEST PALM BEACH   ORLANDO   TAMPA   TALLAHASSEE   AMSTERDAM

Geneva 11, Switzerland

1st Engineering Group
7th October Camp,
Gargarash Road,
Tripoli, Libya

First Investment Group Corporation
1st Engineering Group
C/O Irene Dallas
irenedallas1@aol.com
Dallas & Co. Solicitors
The Old Lodge, Whitchurch Hill
South Oxfordshire, RG8 7NU

**E.   No Injunction Bond Is Required.**

44.    The requested preliminary injunction does not require APR's posting of a bond because Defendants cannot demonstrate any risk of monetary loss from an order that bars them from pursuing the Libyan Proceeding, or any such proceeding, in violation of the Agreement. *See Am. Civil Liberties Union of Fla., Inc. v. The Florida Bar*, 744 F. Supp. 1094, 1100 (N.D. Fla. 1990) ("Because defendants have not indicated a risk of monetary loss from the issuance of a preliminary injunction, no bond will be required under Rule 65 of the Federal Rules of Civil Procedure.").

45.    Moreover, pursuant to Paragraph 10(h) of the Agreement, Defendants agreed to the granting of injunctive relief in favor of APR without the necessity of it posting a bond. (*See* Agreement, ¶ 10(h) ("In the event that the Service Provider or the Principals shall commit or cause to commit a breach of this Agreement (including but not limited to the provisions of Sections 5-8 hereof), then in such event, each of the Service Provider and the Principals hereby consents to the granting of a temporary or permanent injunction against it, him or her by any court of competent jurisdiction prohibiting it, him or her from violating any provision of this Agreement, without the necessity of having to post any bond therefor.").)

WHEREFORE, the Plaintiff, APR ENERGY, LLC, respectfully requests that this Court enter an Order barring the Defendants, FIRST INVESTMENT GROUP CORPORATION and FIRST ENGINEERING GROUP a/k/a 1ST ENGINEERING GROUP, from pursuing the Libyan Proceeding, or any such proceeding elsewhere, in accordance with the terms of the Agreement, pursuant to 9 U.S.C. § 206, Florida Statutes § 682.03, anti-suit injunction principles, and granting Plaintiff all other relief deemed just, proper, and equitable.

Dated this  19th  day of May, 2014.

Respectfully submitted,

SHUTTS & BOWEN LLP

*Attorneys for Plaintiff*
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 379-9189
Facsimile: (305) 347-7889

By:/s/ Harold E. Patricoff
Harold E. Patricoff
Florida Bar No. 508357
*hpatricoff@shutts.com*
Arturo Martinez
Florida Bar No. 526231
*arturomartinez@shutts.com*

**VERIFICATION**

I, LAURENCE ANDERSON, President of APR ENERGY, LLC, verify under penalty of perjury in accordance with 28 U.S.C. § 1746 that the facts provided in support of the foregoing Motion are true and correct based on my personal knowledge, as supported by APR ENERGY, LLC's records and the knowledge of APR ENERGY, LLC's personnel.

_____

LAURENCE ANDERSON

Date:  _MAY 16, 2014_____

MIADOCS 9207173 5

**SHUTTS & BOWEN LLP**
1500 Miami Center • 201 South Biscayne Boulevard, Miami, Florida 33131 • ph 305.358.6300 • fx 305.381.9982 • www.shutts.com

MIAMI    FORT LAUDERDALE    WEST PALM BEACH    ORLANDO    TAMPA    TALLAHASSEE    AMSTERDAM