**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

APR ENERGY, LLC, a Florida limited liability
company,

         Plaintiff,

v.                                  Case No.  3:14-cv-575-J-34JBT

FIRST INVESTMENT GROUP
CORPORATION, a foreign corporation;
and FIRST ENGINEERING GROUP a/k/a
1st ENGINEERING GROUP, a foreign
corporation,

         Defendants.
_____/

**O R D E R**

      **THIS CAUSE** is before the Court on Defendants' Amended Motion for Stay Pending

Appeal and/or for Reconsideration (Doc. 40; Motion) filed on October 16, 2014.  In the

Motion, Defendant First Investment Group Corporation (FIGCorp) and FIGCorp's subsidiary

Defendant First Engineering Group (FEG) (collectively, Defendants)  seek reconsideration

of the Court's September 29, 2014 Order (Doc. 33; September 29, 2014 Order), and

alternatively, seek a stay of the Order pending appeal. See Motion at 11-12.  Plaintiff APR

Energy, LLC (APR), filed APR's Memorandum in Opposition to Defendants' Amended

Motion for a Stay Pending Appeal and/or for Reconsideration (Doc. 42; Response) on

October 28, 2014.  On November 3, 2014, Defendants filed Defendants' Reply in Support

of their Amended Motion for Stay Pending Appeal and/or for Reconsideration (Doc. 43;

Reply) without first filing Defendants' Motion for Leave to File Reply in Support of their

Amended Motion for a Stay Pending Appeal and/or for Reconsideration (Doc. 44; Motion to

File a Reply).  The Court denied Defendants' Motion to File a Reply for failure to comply with Local Rule 3.01(g), United States District Court, Middle District of Florida, and struck Defendants' Reply.  <u>See</u> Order  (Doc. 45).  On November 5, 2014, Defendants filed FIG/FEG' [sic] Renewed Motion for Leave to File Reply in Support of their Amended Motion for a Stay Pending Appeal and/or for Reconsideration (Doc. 46), which the Court also denied, <u>see</u> Order (Doc. 48).  On December 9, 2014, the Court heard argument on the Motion.  <u>See</u> Hearing Transcript (Doc. 54; Motion Hearing Tr.).  Accordingly, the Motion is ripe for review.

## I.      Procedural History

APR initiated this action on May 19, 2014, by filing a three count Complaint against Defendants.  <u>See generally</u> Complaint (Doc. 1; Complaint).[1]  In the Complaint, APR alleges that wishing to establish and operate a thermal power plant project in Libya, it entered into a services agreement with Defendants on or about January 30, 2013.  <u>See</u> Services Agreement at 1 (Doc. 1-1; Services Agreement).[2]  Under the Services Agreement, FEG agreed to provide consulting services to APR, and both FEG and FIGCorp were to receive payment for those services.  <u>See</u> Services Agreement at 1, 17.  Specifically, APR asserts that pursuant to the Services Agreement it was to pay Defendants 8% of the actual amount paid to APR by General Electricity Company of Libya (GECOL).  Complaint ¶ 13.

---

[1] In Count 1 of the Complaint, APR seeks an order compelling arbitration pursuant to 9 U.S.C. § 206.  Complaint at 9-10.  In Count 2, APR seeks an order compelling arbitration pursuant to Florida Statutes section 682.03.  <u>Id.</u> at 10-11.  In Count 3, APR requests the issuance of an anti-suit injunction against Defendants.  <u>Id.</u> at 11-12.

[2] The only signature on the Services Agreement which is dated shows a date of January 30, 2013.

On March 31, 2014, Defendants' counsel wrote to APR regarding APR's alleged failure to pay Defendants as required by the Services Agreement (Doc. 1-2; March 31, 2014 Letter).  The letter stated that Defendants had instructed their counsel to commence arbitration proceedings in accordance with Clause 10(a) of the Services Agreement, and to make an application, pursuant to Clause 10(h) of the Services Agreement, to the Court in Tripoli "for an order to prevent the payment of any further sums to [APR] by GECOL until this dispute is resolved."  See March 31, 2014 Letter.  Clause 10 of the Services Agreement provides in relevant part, "any dispute which arises under this Agreement shall be resolved by submittal to binding arbitration pursuant to the International Arbitration Rules of the International Center for Dispute Resolution of the International Chamber of Commerce (the "ICC")[.]" Services Agreement at 5.  Clause 10(h) of the Services Agreement provides a narrow exception to the parties' duty to arbitrate:

> The parties reserve the right to refer to a court of competent jurisdiction all preliminary injunction suits, if necessary to obtain legal measures intended to protect their rights prior to or during the arbitration, and such measures shall not be considered a waiver or violation of the arbitration; provided that, such judicial relief: (i) is limited to that which is required to prevent imminent damage to a party; and (ii) does not resolve the merits or substance of such Dispute.  In the event that the Service Provider or the Principals shall commit or cause to commit a breach of this Agreement (including but not limited to the provisions of Sections 5-8 hereof), then in such event, each of the Service Provider and the Principals hereby consents to the granting of a temporary or permanent injunction against it, him or her by any court of competent jurisdiction prohibiting it, him or her from violating any provision of this Agreement, without the necessity of having to post any bond therefor.  In any proceeding for an injunction and upon any motion for a temporary or permanent injunction, each of Service Provider and the Principals agrees that its, his or her ability to answer in damages shall not be a bar or interposed as a defense to the granting of such temporary or permanent injunction against each of the Service Provider and the Principals.  Each of the Service Provider and the Principals further agrees that APR will not have an adequate remedy at law in the event of any breach by the Service Provider or the Principals and

that APR will suffer irreparable damage and injury if any of the Service Provider or the Principals breaches any of the provisions of this Agreement.

Id. at 6.  APR acknowledges Defendants stated an intention to commence arbitration proceedings in accordance with the Services Agreement, but also alleges that Defendants threatened to initiate litigation in Libya, seeking an order to prevent any further payment to APR by GECOL.  Complaint ¶ 16.

In conjunction with the Complaint, APR filed Plaintiff, APR Energy, LLC's Verified Motion for Expedited Hearing and Preliminary Injunction Barring Defendants from Pursuing Libyan Proceeding in Contravention of Arbitration Agreement (Doc. 3; Verified Motion for Preliminary Injunction), in which it requested that the Court "(a) enter an Order compelling the Defendants to submit the dispute which Defendants have threatened to litigate in Libya to binding arbitration, as agreed upon in the Agreement, and (b) enjoin the Defendants from pursuing" legal proceedings in Libya.  Verified Motion for Preliminary Injunction ¶ 13; see also Complaint ¶ 22.  On May 22, 2014, the Court entered an order setting a briefing schedule and a hearing on the Verified Motion for Preliminary Injunction for June 17, 2014 (Doc. 7).  At about the same time, Defendants initiated an ICC arbitration against APR, see Defendants' First Investment Group Corporation's and First Engineering Group's Verified Response Opposing Plaintiff's Motion for Preliminary Injunction ¶ 10 (Doc. 15; Preliminary Injunction Response), and on or about May 23, 2014, FEG initiated legal proceedings in Libya (the "Libyan Proceeding") by submitting an application to the Libyan court asserting that APR had failed to fulfill its obligations to FEG under the Services Agreement and requesting that 8% of the value of APR's contract with GECOL "remain on precautionary hold with GECOL," see Libyan Application at 8, 10 (Doc. 15-3; Libyan Application); see also

Preliminary Injunction Response ¶ 12.  On or about June 2, 2014,[3] the Libyan court issued an order placing a "precautionary hold on APR's dues with GECOL, as fulfillment of the debts of the plaintiff company [FEG] representing 8% of the one hundred million US dollars paid to APR" and setting a hearing for June 17, 2014 (Doc. 15-4; Libyan Order).

On June 6, 2014, Defendants filed their Response to the Verified Motion for Preliminary Injunction, and on June 11, 2014, APR filed APR's Reply in Support of its Verified Motion for Expedited Hearing and Preliminary Injunction Barring Defendants from Pursuing Libyan Proceeding in Contravention of Arbitration Agreement (Doc. 16; Reply). On July 22, 2014, after having given the parties an opportunity to resolve their dispute through mediation, the Court held a Telephonic Status Conference, during which the parties consented to the entry of a preliminary injunction compelling arbitration pursuant to the terms of the Services Agreement (Doc. 22; 7/22/2014 Clerk's Minutes).  Accordingly, the Court entered an order granting preliminary injunctive relief to the extent of the parties' consent and directing the parties to arbitrate all covered claims (Doc. 23; July 22, 2014 Order).  The Court then took the remaining issues, whether the Libyan Proceeding falls within the exception to the parties' agreement to arbitrate and APR's request for an anti-suit injunction, under advisement and set the matter for a hearing to be held on August 21, 2014, at 2:00 p.m. Id. at 2.  Pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, and with the parties' consent, the Court advanced the trial on the merits and consolidated it with the preliminary injunction hearing.  Thus, the August 21, 2014 hearing was a hearing to resolve

---

[3] Defendants assert that the Libyan court granted the Libyan Application on June 2, 2014. See Preliminary Injunction Response ¶ 12. Albudery Shariha, APR's Libyan counsel, states in his declaration that the Libyan court granted the ex parte hold on June 5, 2014. See Declaration of Albudery Shariha ¶ 6 (Doc. 29-2, Exhibit B; 7/31/2014 Shariha Decl.).  This discrepancy is not material.

the merits of the action ("Merits Hearing").  At the Merits Hearing the Court heard extensive argument from all, and on September 29, 2014, entered an order finding that Defendants' request for interim relief in the Libyan Proceeding was covered by the Services Agreement's arbitration clause, that APR was entitled to an anti-suit injunction, and that judgment should be entered in favor of APR.  <u>See</u> September 29, 2014 Order.  Soon thereafter, Defendants filed the Motion now before the Court in which they seek reconsideration of the Court's September 29, 2014 Order or a stay pending appeal.

## II.    Standard of Review

Preliminarily, the Court notes that Defendants seek a stay or reconsideration of the Court's September 29, 2014 Order under Rules 60 and 62(c) of the Federal Rules of Civil Procedure (Rule(s)), Rule 8(a) of the Federal Rules of Appellate Procedure, "and other applicable Florida law[.]" Motion at 1.  Rule 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  <u>See</u> Rule 62(c).[4]  Defendants have not filed a notice of appeal, thus, Rule 62(c) is inapplicable.  However, Defendants also seek postjudgment relief under Rule 60.[5]  "The Federal Rules of Civil Procedure provide two

---

[4] Pursuant to Rule 8, Federal Rules of Appellate Procedure (Appellate Rule(s)), "[a] party must ordinarily move first in the district court" to obtain an order suspending an injunction while an appeal is pending, prior to requesting this relief from the appellate court.  <u>See</u> Appellate Rule 8(a)(1)(C).

[5] Pursuant to Rule 62(b), the Court has the discretion to stay a judgment during the pendency of a motion brought pursuant to Rule 59, to alter or amend a judgment, or Rule 60, for relief from judgment.  In light of the Court's decision to defer consideration of Plaintiff's Motion for Contempt (Doc. 37) pending resolution of the Motion, and the Court's decision herein to vacate the previously entered judgment, the Court need not address whether a stay under Rule 60(b) would be warranted.

vehicles by which a party may seek relief in a postjudgment motion, [Rule] 59(e) and [Rule] 60(b)." Gordon v. Colvin, No. 4:12-CV-1625-WMA, 2014 WL 4715868, at *1 (N.D. Ala. Sept. 22, 2014).[6] "Because a motion brought under Rule 59 tolls the filing period for appeals, this distinction is significant." Travelers Cas. & Sur. Co. of Am. v. Thorington Elec. & Constr. Co., No. 2:09-CV-37-WKW [WO], 2010 WL 743138, at *1 (M.D. Ala. Mar. 1, 2010). However, "[i]n determining whether a [postjudgment] motion is one brought under Rule 59(e), nomenclature is not controlling." Gulf Power Co. v. Coalsales II, LLC, 522 F. App'x 699, 709 n.15 (11th Cir. 2013) (quoting Munden v. Ultra-Alaska Assoc., 849 F.2d 383, 386 (9th Cir. 1988)); see also Finch v. City of Vernon, 845 F.2d 256, 258 (11th Cir. 1988) ("The only rule specified in the motion's caption was Rule 60, but the style of the motion is not controlling."). Indeed, courts may construe a postjudgment motion "as made pursuant to either [Rule] 59 or 60 - regardless of how the motion is styled by the movant - depending on the type of relief sought." Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997). "In classifying postjudgment motions, [the Eleventh Circuit Court of Appeals] has drawn a substantive/collateral distinction: 'Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of a dispute, and not matters collateral to the merits.'" Finch, 845 F.2d at 258. As such, courts construe postjudgment motions brought within 28 days of judgment, and which "call[ ] into question the correctness of that judgment"

---

[6] The Federal Rules of Civil Procedure do not specifically provide for the filing of a motion for reconsideration. Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991); Controlled Semiconductor, Inc. v. Control Systemation, Inc., No. 6:07-cv-1742-Orl-31KRS, 2008 WL 4459085, at *1 (M.D. Fla. Oct. 1, 2008). It is widely recognized, however, that Rule 59(e) (which governs motions "to alter or amend a judgment") encompasses motions for reconsideration. Controlled Semiconductor, Inc., 2008 WL 4459085, at *1 (citing 11 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure 2d § 2810.1 (2007)).

as motions under Rule 59.  See id. at 258-59 (quoting Dove v. Codesco, 569 F.2d 807, 809 (4th Cir. 1978)); see also Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994); Rance v. D.R. Horton, Inc., 316 F. App'x 860, 863 (11th Cir. 2008) (explaining that a post-judgment motion to alter or amend the judgment served within the time for filing a Rule 59 motion other than a motion to correct purely clerical errors, "is within the scope of Rule 59(e) regardless of its label"); Mahone v. Ray, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003).[7]

Here, Defendants filed the Motion within 28 days of the Court's entry of judgment and seek to address misrepresentations made by APR which the Court accepted, and as such, seek to correct a manifest error of fact in the Court's judgment.  See Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) ("'[T]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.'").  Thus, the Court will construe the Motion as seeking postjudgment relief under Rule 59.[8]

A motion to alter or amend a judgment may be filed pursuant to Rule 59(e), which affords the Court substantial discretion to reconsider an order which it has entered.  See Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000);  O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992).  "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343

---

[7] The time to file a motion under Rule 59 was extended from 10 days to 28 days in 2009.  See Advisory Committee Notes to Rule 59 for 2009 Amendments.

[8] Moreover, even if the Court were to consider the Motion under Rule 60(b), doing so would not produce a different result.  "A 'significantly higher' standard is generally used to decide whether a movant is entitled to relief under Rule 60(b)." Holland v. Tucker, No. 06-CIV-20182, 2012 WL 2412115, at *2 n.1 (S.D. Fla. June 26, 2012) (quoting Vanderberg v. Donaldson, 259 F.3d 1321, 1326 (11th Cir. 2001)).

(11th Cir. 2007) (quotations and citations omitted).   This Court has interpreted those parameters to include "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." Lamar Advertising of Mobile, Inc. v. City of Lakeland, Fla., 189 F.R.D. 480, 489 (M.D. Fla. 1999). For example, reconsideration may be appropriate where "the Court has patently misunderstood a party." O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 483 (S.D. Fla. 2006).

Rule 59(e), however, cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).   Additionally, motions to alter or amend "should not be used to raise arguments which could, and should, have been made before the judgment was issued." O'Neal, 958 F.2d at 1047 (quotations and citations omitted).   Indeed, permitting a party to raise new arguments on a motion for reconsideration "essentially affords a litigant 'two bites of the apple.'" American Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985); see also Mincey, 206 F.3d at 1137 n.69 (citation omitted); Mays, 122 F.3d at 46 ("a motion to reconsider should not be used by the parties to set forth new theories of law").   As such, the Eleventh Circuit has held that the "[d]enial of a motion for reconsideration is especially sound when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage of the litigation." Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1292 (11th Cir. 2001) (internal quotations and citation omitted).   Moreover, "[w]hen evaluating a motion to reconsider, a court should proceed cautiously, realizing that 'in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is

an extraordinary remedy to be employed sparingly.'" United States v. Bailey, 288 F. Supp.

2d 1261, 1267 (M.D. Fla. 2003) (citation omitted).

## III.    Discussion

In the Motion, Defendants do not challenge the Court's entry of judgment compelling

arbitration as to all claims including the claim for interim relief presented in the Libyan

Proceeding.   Instead, they challenge the Court's entry of the anti-suit injunction which

requires FEG to dismiss the Libyan Proceeding and prohibits Defendants from pursuing

other similar proceedings.  See Motion at 1 (wherein Defendants "move the Court to stay

pending appeal its September 29, 2014 Order . . . granting Plaintiff's Motion for a Preliminary

Injunction from Pursuing Libyan Proceedings").    Defendants argue that APR made

misrepresentations "in its pleadings in an attempt to gain an anti-suit injunction to which APR

Energy, LLC has no entitlement."  Id. at 2.   Specifically, Defendants contend that APR

misrepresented to the Court that APR had a contract with GECOL.   Motion at 1-2.

Defendants contend they later learned, by way of APR's assertions in the ongoing arbitration

proceedings, that the GECOL contract is held by a different entity - APR Energy Holdings,

Ltd. Id.[9] According to Defendants, "[t]he relief requested by Plaintiff and awarded to Plaintiff

was based on the Plaintiff's assertions that it held the Contract with GECOL - not some other

entity." Id. at 6.  Defendants note, for example, that in the Complaint APR alleges that "[i]f

Defendants are permitted to proceed with the Libyan Proceedings and obtain the relief they

request, APR will be unable to perform its obligations to GECOL, [and] its business interests

---

[9] Any reference by the Court to "APR" in this Order is a reference specifically to the Plaintiff in this action, APR Energy, LLC.

and reputation in Libya will be permanently and irreparably damaged . . ." Complaint ¶ 21.

Defendants contend that such representations are "false" because APR does not have a

contractual relationship with GECOL. See Motion at 4, 6. Defendants argue that because

APR does not hold the GECOL contract, APR does not have a "direct right" to payment from

GECOL, and APR therefore, will not be irreparably harmed as a result of the Libyan

injunction preventing payment of funds by GECOL to another APR entity. Id. at 7.

Additionally, Defendants assert that the record before the Court contains no evidence

explaining the relationship between APR and the other APR entity which they assert actually

holds the GECOL contract. Id. at 2.

Defendants do not address the standard for a motion for reconsideration in their

Motion.   Instead, Defendants recite APR's alleged misrepresentations and rely on the

above-stated arguments to support the relief they request. See id. at 8-9. Defendants also

argue that because APR has no contract with GECOL, APR has no standing to pursue its

claim for an anti-suit injunction. Id. at 9-11.  The Court will consider Defendants' standing

argument before turning to Defendants' arguments regarding APR's alleged

misrepresentations.

### A.   Standing

In this post-judgment Motion, Defendants contend that APR lacks standing because

APR has no contractual relationship with GECOL, no right to payment from GECOL, and,

therefore, has not suffered irreparable harm as a result of the Libyan injunction. Id. at 9-11.

At the outset, the Court observes that Defendants' standing argument is not properly before

the Court as part of a Rule 59 motion because Defendants knew prior to entry of judgment

that an entity other than APR held the GECOL contract.  Indeed, it was Defendants' own lawyer, Irene Dallas, who stated in her affidavit filed before the Merits Hearing that the GECOL contract is "between GECOL and APR [Energy] PLC" and that "APR is an affiliate of APR [Energy] PLC."  See Affidavit of Irene Dallas in Support of Defendants' Response Opposing Motion for Preliminary Injunction ¶ 9 (Doc. 28-1; Dallas Aff.).  As such, Defendants were well aware before appearing at the Merits Hearing and before entry of Judgment that APR was not a party to the GECOL contract, yet raised no question as to APR's standing.  Thus, on this basis, Defendants' Motion is due to be denied.  "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."  Jacobs, 626 F.3d at 1344 (quoting Michael Linet, Inc., 408 F.3d at 763).  Nevertheless, because the constitutional standing doctrine is directly related to Article III's "case or controversy" requirement, this argument could implicate the Court's subject matter jurisdiction, and therefore, the Court will address it on the merits.  See Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1242 (11th Cir. 2003).

Upon review, the Court finds Defendants' contention that APR lacks standing to pursue this action to be without merit.  APR sued Defendants to enforce rights arising under the Services Agreement entered into by and between APR, FIGCorp, and FEG.  See Services Agreement at 1.  The Services Agreement contains an arbitration clause which requires "any dispute which arises under this Agreement [to] be resolved by submittal to binding arbitration[.]" Id. at 5.  A dispute has arisen between APR and Defendants regarding payment, entitlement to payment, and the remedies available to Defendants pending resolution of the dispute.  See Complaint at 4-9.  FEG has sought interim relief on behalf of

Defendants in the Libyan Proceeding, and APR contends that the filing of the Libyan Proceeding violates the arbitration requirement of the Services Agreement.  See September 29, 2014 Order at 6-7, 9; see also Complaint at 7-9.  In the Complaint, APR seeks an order compelling arbitration of the parties' entire dispute, including Defendants' claim for interim relief presented to the Libyan court.  See Complaint at 9-10.  Additionally, APR seeks an anti-suit injunction to require Defendants to dismiss the precautionary hold in the Libyan court because it violates the parties' agreement to arbitrate and to enjoin Defendants from initiating any similar proceeding.  See id. at 9, 11-12; see also September 29, 2014 Order at 39.

By arguing that APR lacks standing because APR has no contract with GECOL, Defendants ignore that in seeking an Order compelling arbitration and an anti-suit injunction, APR seeks to enforce its rights under the Services Agreement, the contract to which APR is a party, not the GECOL contract.  As APR seeks to enforce its own rights under the Services Agreement, APR has and continues to have standing to pursue the claims raised in this action.[10]

---

[10] In the Motion, Defendants also argue that they are not violating the Services Agreement by bringing suit in Libya because "Florida's litigation privilege absolutely inoculates FIG/FEG from liability for the judicial pursuit of their claims."  Motion at 9 (citing Delmonico v. Traynor, 116 So.3d 1205 (Fla. 2013)). Although this argument utterly lacks merit, as stated above, in a Rule 59(e) motion, Defendants may not raise new arguments which could have been raised prior to entry of judgment.  See Jacobs, 626 F.3d at 1344.  Defendants did not raise this argument prior to entry of judgment, and the Court will not consider it further.

**B.**    **APR's Alleged Misrepresentations**

The Court turns next to Defendants' argument that the anti-suit injunction entered in this action is inappropriate because it is based on APR's misrepresentations regarding its right to payment from GECOL and the "substantial and irreparable harm" it will suffer as a result of the Libyan injunction.[11]   Preliminarily, the Court finds Defendants' arguments regarding APR's inability to establish "substantial and irreparable harm" because APR did not have a contract with GECOL, and thus, no right to payment from GECOL, to be misplaced.  Although the traditional elements for granting a preliminary injunction require a showing of "a substantial threat of irreparable injury if the injunction were not granted," <u>see</u> <u>Am. Red Cross v. Palm Beach Blood Bank, Inc.</u>, 143 F.3d 1407, 1410 (11th Cir. 1998), in determining the suitability of the anti-suit injunction requested in Count 3 of the Complaint, the Court did not rely upon the traditional elements for granting preliminary injunctive relief, <u>see</u> September 29, 2014 Order at 20-21.  Indeed, in the September 29, 2014 Order, the Court made no finding regarding the likelihood that APR would suffer irreparable harm due to non-payment by GECOL.  Instead, the Court analyzed this claim under anti-suit injunction principles, which consider whether a federal court has the authority to enjoin foreign suits by persons subject to that federal court's jurisdiction.  <u>See</u> <u>Canon Latin Am., Inc. v. Lantech (CR), S.A.</u>, 508 F.3d 597, 601 (11th Cir. 2007).

In granting the anti-suit injunction, the Court first determined that APR had established the first threshold requirement - identity of parties in the foreign and domestic

_____

[11] Some of the alleged misrepresentations do not appear to be misrepresentations, but rather reflect the terms of the Services Agreement between APR and FIG/FEG.  <u>See</u> Motion at 4 (citing Verified Motion for Preliminary Injunction ¶¶ 4, 11).

lawsuits.   September 29, 2014 Order at 28.   Specifically, the Court found that in the

domestic suit, the parties to the action were APR, FEG, and FIGCorp. Id. at 21.   With

regard to the Libyan Proceeding, the Court determined the parties were APR Energy, PLC,

FEG, and GECOL.   Id.   In reaching this conclusion, the Court noted that in Defendants'

translation of the Libyan application, FEG named "APR Energy Ltd.", but that at the Merits

Hearing, APR's counsel informed the Court that FEG actually named an affiliate of APR,

"APR [Energy] PLC," because APR Energy PLC, not APR, had the contract with GECOL.

Id. at 21 n.21. Relying on the record evidence establishing an affiliate relationship between

FEG and FIGCorp, and the uncontested representations regarding APR Energy PLC being

named in the Libyan Proceeding and being an affiliate of APR, the Court determined that

although literal identity of parties did not exist, these entities were "effectively the same for

purposes of both actions." Id. at 25 & n.23.   With regard to the presence of GECOL in the

Libyan Proceeding, the Court determined that its presence did not destroy the identity of

parties requirement because GECOL was simply a nominal, third-party with no claims or

defenses in the foreign action.   Id. at 25-28.   Next, the Court determined that APR had

established the second threshold requirement for an anti-suit injunction - that resolution of

the case before the enjoining court would be dispositive of the action to be enjoined. Id. at

30.   Specifically, the Court determined that because Defendants' claim in the Libyan

Proceeding falls within the scope of the parties' arbitration clause, and because the Court

granted APR's motion to compel arbitration, resolution of the instant action would dispose

of the Libyan Proceeding.   Id.   Last, the Court addressed several additional, discretionary

factors relevant to whether the facts before the Court warranted an anti-suit injunction.   Id.

at 30-34.  The Court found entry of an anti-suit injunction "particularly appropriate" in light of Defendants' attempt to sidestep the parties' arbitration agreement and federal policy favoring liberal enforcement of arbitration clauses.  Id. at 32-33.  Accordingly, because Defendants' action in Libya constituted an attempt "to carve out an exception to the parties' agreement to arbitration, choice of forum, and choice of law[,]" the Court concluded that discretionary factors outweighed countervailing considerations of comity.  Id. at 33-34. Thus, in granting the anti-suit injunction, at no point did the Court rely upon any aspect of APR's allegations concerning "substantial and irreparable harm" that might be caused by an interference with any right under the GECOL contract.

In the Motion, Defendants argue that APR has now disclosed that the GECOL contract is actually held by APR Energy Holdings, Ltd., not APR or APR Energy PLC, and that the record is devoid of any evidence to explain the relationship between APR, APR Energy Holdings, Ltd., and APR Energy PLC.  See Motion at 1-2, 6.  As such, Defendants contend that if APR Energy Holdings, Ltd. is the party enjoined by the Libyan court, APR has no right to the anti-suit injunction entered by this Court.  Id. at 2.  In response to the Motion, APR acknowledges its position that APR Energy Holdings, Ltd. is the party that actually entered into the contract with GECOL, but contends that this fact provides no basis for reconsideration.  Specifically, APR alleges

> the information at issue-i.e., that an APR affiliate, APR Energy Holdings Limited ("APR Holdings"), not APR, was the entity that entered into the GECOL contract-was: (a) well known to Defendants many months ago, as shown by their purposeful filing of the Libyan Proceeding against that particular APR affiliate [D.E. 15-3 at 5]; (b) known to the Court as a result of its examination of Defendants' Libyan Application which named the affiliate [id.] and Defendants' British counsel's, Irene Dallas August 1, 2014 Affidavit ("Dallas Affidavit") which also stated the GECOL contract was with the APR

affiliate [D.E. 28-1 ¶ 9] and the Court specifically cited and addressed both points in the Injunction Order [D.E. 33, nn. 4, 21]; and (c) entirely immaterial to an adjudication of this action as the Court has already noted.

Response at 2.  In making this argument, APR relies only on the Libyan Application as evidence that FEG named a different APR entity in the Libyan Proceeding and not APR itself.  Nevertheless, APR appears to concede that the APR entity named in the GECOL contract is the APR entity against whom FEG filed the Libyan action.

Preliminarily, the Court observes that by relying on APR's misrepresentations regarding whether it or another APR entity held the contract with GECOL, Defendants misapprehend the relevant inquiry before the Court in determining the propriety of an anti-suit injunction.  The question of who entered into the contract with GECOL is not determinative of whether APR is entitled to an anti-suit injunction.  The relevant question is whether APR satisfies the requirements for such relief, the first of which mandates that there be an identity of the parties named in the foreign and domestic proceedings.  See Canon Latin Am., Inc., 508 F.3d at 601.  With regard to this issue, in response to APR's Verified Motion for Preliminary Injunction, Defendants argued that APR could not satisfy the threshold requirement of identity of parties because "[i]n the case at bar, only APR and FIG/FEG are parties[,]" and "[i]n the Libyan proceedings, APR, FEG, and GECOL are the parties."  See Preliminary Injunction Response at 5.[12]  Thus, in the Preliminary Injunction Response, Defendants argued that APR failed to establish identity of parties based on FIGCorp's absence from the Libyan Proceeding and GECOL's presence in the Libyan

─────────────────────

[12] In Defendants' Response, APR Energy, LLC, is referred to as "APR."  Preliminary Injunction Response at 1.

Proceeding.  See id.  Defendants did not contend that APR was absent from the Libyan Proceeding as a basis for their opposition to the anti-suit injunction.  Nor did Defendants argue that the APR entity that held the contract with GECOL was the party sued in the Libyan Proceeding or that such entity had to be a party to the Libyan Proceeding.  See generally id.  Moreover, Defendants did not argue that the fact that another APR entity actually held the contract with GECOL defeated APR's request for relief.

Nevertheless, the questions of which entity held the contract with GECOL and which entity was a party to the Libyan Proceeding became blurred during the Merits Hearing.  The confusion began with the August 1, 2014 affidavit of Defendants' counsel, Irene Dallas, in which she stated that Defendants' "principal reasons" for filing the Libyan Proceeding were that the debt owed by APR to Defendants "is just, due, and unpaid" and Defendants feared that APR would not have the money in its possession once Defendants executed judgment against APR.  See Dallas Aff. ¶ 3.  Dallas further explained,

> FIG/FEG is also concerned that whilst the Services Agreement, which is central to this dispute, is with APR, the Contract which APR procured as a result of FIG/FEG's efforts is between GECOL and APR PLC.  APR is an affiliate of APR PLC.

See Dallas Aff. ¶ 9.  In light of Dallas's Affidavit, the Court questioned which entity was actually named in the Libyan Proceeding.  See Merits Hearing Transcript at 20-21 (Doc. 35; Merits Hearing Tr.).  APR's counsel answered,

> [t]hey name PLC, but they refer within the body to the entity being the one that they had the relationship with, which is [APR] LLC.
>      Yeah, Limited Holdings.  Essentially what happened, Your Honor, is they named Limited Holdings, because that's who has the contract with GECOL.  But within the body of their request, they say they had a relationship with the first party which is actually us [APR], but they didn't tell that to the Libyan court.

Id. at 21.  Defendants' counsel did not respond to APR's counsel's assertion that the entity named in the Libyan Proceeding was APR Energy PLC.  Given the parties apparent agreement, in the September 29, 2014 Order, the Court accepted this assertion, despite what the Court now recognizes to be substantial evidence to the contrary.  In the Order, the Court explained,

> FEG named "APR Energy Ltd." in the Libyan Proceeding.  See Libyan Application at 5.  Although APR's Libyan counsel testified that the Libyan Proceeding was commenced by FEG against APR Energy, LLC, see 7/31/2014 Shariha Decl. ¶ 2, at the preliminary injunction hearing, APR's counsel informed the Court that FEG named "APR PLC," also referred to as "APR Limited Holdings," in the Libyan Proceeding because APR PLC, not APR LLC, had the contract with GECOL.  As discussed below, the Court concludes that the distinction between APR LLC and APR PLC, which all parties agree are related entities, is not material for purposes of resolution of the Motion.

September 29, 2014 Order at 21 n.21.  Further, the Court concluded,

> to the extent APR Energy, PLC, is named in the Libyan Proceeding, whereas APR Energy, LLC, is the party to instant action, these entities are also effectively the same parties.  Indeed, although FEG named APR PLC in the Libyan action, the allegations underlying its request for relief relate only to the obligations of APR LLC, as it is APR LLC, not APR PLC, that is a party to the Services Agreement and that arguably owes the debt to FEG/FIGCorp.

Id. at 25 n.23.

Thus, the Court previously concluded that FEG named APR Energy PLC in the Libyan Proceeding.  However, the only evidence before the Court regarding APR Energy PLC was Dallas's affidavit in which she testified that the GECOL contract was held by APR Energy PLC and that APR Energy PLC was an affiliate of APR.  See Dallas Aff. ¶ 9.  She did not state that APR Energy PLC was a party to the Libyan Proceeding.  Nor did she or anyone point to any evidence that APR Energy PLC was named in the Libyan Proceeding.

Nevertheless, her assertion regarding APR Energy PLC holding the GECOL contract prompted the statements of APR's counsel that FEG named APR Energy PLC in the Libyan Proceeding because APR Energy PLC held the GECOL contract. However, this statement was not evidence, and the Court relied on this assertion despite substantial evidence to the contrary. In considering Defendants' Motion, the Court has exhaustively reviewed the record evidence and concludes that it fails to support a finding that APR Energy PLC is named in the Libyan Proceeding. As such, by accepting counsel's unsupported representation, the Court made a manifestly erroneous factual finding that APR Energy PLC was the APR entity named in the Libyan Proceeding.

The identification of the party or parties named in the foreign proceeding is critical to a court's determination of whether an anti-suit injunction is warranted. See S.E.C. v. Pension Fund of Am., L.C., 396 F. App'x 577, 581 (11th Cir. 2010). This is so because the court must know who the parties are to determine whether the threshold identity of parties requirement is satisfied. Id. Ordinarily this would be a simple task. In this case, however, the parties have made it anything but simple.

The Court is presented with two translations of FEG's Libyan Application, neither of which identifies the title of the legal entity named in Libya in a manner entirely consistent with the name of any APR entity identified in this action. Looking to the other evidence presented by the parties, the Court notes that the parties have either failed to make any effort to be accurate or precise in naming the specific APR entity to which they refer or have

been intentionally ambiguous about which entity they speak.[13]   Finally, and significantly compounding the confusion, although the evidence before the Court has remained essentially unchanged,[14] the parties' positions regarding which APR entity FEG named in the Libyan Proceeding has been a moving target.   Initially, both APR and Defendants insisted that FEG named APR in the Libyan Proceeding and APR presented substantial evidence supporting such a finding.  See generally Verified Motion for Preliminary Injunction; Preliminary Injunction Response.  After the August 1, 2014 filing of the Dallas Affidavit, both APR and Defendants changed course and appeared to agree that APR Energy PLC was the APR entity named.  Now they urge the Court to conclude that APR Energy Holdings, Ltd. is the party named in the Libyan Proceeding.  See generally Motion; Response.  The evolving positions of the parties seem to be driven not by the evidence before the Court at the Merits Hearing, but rather by the identification of the party in privity with GECOL.  It is certainly logical that in filing an action against GECOL to enjoin GECOL from making payments to an APR entity, FEG would file the action against both GECOL and the APR entity to whom GECOL actually owed the monetary obligation.  However, just as the question before the Court is not who GECOL entered into a contract with, it is also not who

---

[13] Indeed, the Court notes that while this action has been proceeding, the parties have also been engaged in an arbitration to resolve the merits of their dispute.  The amount in controversy in that arbitration dwarfs the $8 million at issue here.  Moreover, while this action will determine whether the GECOL funds must be released, the arbitration will determine APR's liability and FEG's ultimate entitlement to those funds.  In other words, the Court recognizes that the real battle between the parties is being played out in the arbitration.  And, perhaps as a result of that, the parties' positions here appear at times to be more reflective of their strategy for obtaining success in the arbitration than squarely addressing the specific facts and issues before this Court.

[14] The only difference in the evidence would be the name of the APR entity that entered into the contract with GECOL.

the parties now believe to be the proper party to the Libyan Proceeding.  The question is "who did FEG name when FEG filed the Libyan Application?"

The Court looks first to the title of the parties set forth in the Libyan Application.  The untranslated copy of the Libyan Application is written in Arabic, but the name of the APR entity is written in the English language as simply "APR Energy."  See Libyan Application at 2.  The Court has been presented with two translations of the Libyan Application.  In Defendants' translation the party named is identified as "the legal representative of APR Energy Ltd.," see Libyan Application at 5, and in APR's translation the party named is identified as "the legal representative of APR Energy," see APR's Translation of the Libyan Application at 2 (Doc. 16-1).  In the Court's view both designations appear more likely to be a translation of APR Energy LLC (Ltd. referring to a Limited Liability Company) than a translation of either APR Energy Holdings Ltd. or APR Energy PLC, but the Court cannot make such a finding with great certainty.  Nothing in either translation gives the Court sufficient assurance that the translation accurately reflects the precise title and legal status under United States law of the entity named.  Indeed, the Court recognizes the lack of precision inherent in attempting to translate the formal designation of a legal entity under United States law from Arabic to English.

In light of the challenge presented by the need to rely on the translation of Libyan documents, the parties' lack of precision in identifying the specific APR entity to whom they refer, and their changing positions as to which APR entity is actually named in the Libyan Proceeding, the Court looks to the substance of the Libyan Application and all other

evidence in the record to confirm the identity of the party named in the Libyan Proceeding.[15] Upon review of the record as a whole, the Court is convinced that in filing the Libyan Proceeding, FEG named and intended to file its action against APR, the Plaintiff here.

Turning to paragraph 16 of the Complaint, APR alleges that Defendants' counsel sent a letter dated March 31, 2014, to APR.  Complaint ¶ 16.  APR quotes the letter, which states that in accordance with Clause 10(h) of the Services Agreement, Defendants instructed their lawyers in Libya to apply "for an order to prevent the payment of any further sums to [APR] by GECOL until this dispute is resolved[.]"  See Complaint ¶ 16 (quoting March 31, 2014 letter (Doc. 1-2, Exhibit B)) (alteration in original).  Notably, the "Re:" line of the letter references the Services Agreement between APR and Defendants.  Id.  In their answer, Defendants admit the allegations in paragraph 16 of the Complaint.  See Defendants First Investment Group Corporation and First Engineering Group's Amended Answer, Affirmative Defenses and Counterclaim ¶ 16 (Doc. 27; Answer).  Thus, Defendants admit instructing counsel to initiate the Libyan Proceeding to prevent payment by GECOL to APR, the Plaintiff in this action.  "A fact admitted by answer is no longer a fact in issue."  Hill v. Federal Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941).  Indeed, "a party is bound by the admissions in his pleadings."  Best Canvas Prod. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983).

---

[15] At oral argument on the Motion, Defendants' counsel acknowledged the challenge presented by having to rely on the translation of the Libyan Application to identify the specific parties named in the Libyan Proceeding.  See Motion Hearing Tr. at 22.  After stating that, as he understood it, FEG sought a precautionary hold against APR PLC, Defendants' counsel then looked at the translation of the Libyan Application and represented to the Court that FEG named APR Energy LLC.  See id. at 21.  He then explained "they just refer to them as the party of the first part or first applied against, so its not clear to me, looking at the translation, who is who."  Id. at 21-22.

Further evidence that at the time FEG filed the Libyan Proceeding it named APR is found in two letters from Defendants' counsel, the first of which is dated May 27, 2014, and confirms the filing of the Libyan Proceeding against APR pursuant to the Services Agreement. See May 27, 2014 letter (Doc. 12-1). Specifically, this letter states that "[a]n application has been filed for an order that GECOL withhold from your client any sums which should be paid to our client." Id. at 2 (emphasis added). In this letter, "your client" refers to Plaintiff APR, and "our client" refers to FIGCorp and FEG. Id. at 1.[16] The second letter, dated June 2, 2014, contains a "Re:" line of: "First Engineering Group Corporation and First Engineering Group (FEG/FIG) -v- APR Energy LLC" and states, "[a]s you are aware, our client made an application to the Tripoli Court for an order that GECOL withhold USD 8 million from their next payment to you, this being 8% of the payment of USD 100,000,000 which your client has received from GECOL . . ." See June 2, 2014 letter (Doc. 12-2) (emphasis added). In this letter, "you" and "your client" both refer to Plaintiff APR. Id. Nothing in any of these letters suggests the existence or role of any other APR entity or that at the time FEG filed the Libyan Proceeding, it had any knowledge that GECOL might actually have contracted with a different APR entity, not APR itself.

As previously noted, in the Preliminary Injunction Response, Defendants specifically argued that FEG named APR in the Libyan Proceeding and at no time prior to judgment claimed that APR was absent from the foreign action. See Preliminary Injunction Response at 5 ("In the case at bar, only APR and FIG/FEG are parties. In the Libyan proceedings,

---

[16] The "Re:" line of the letter reads: "APR-V- FIG and FEG; Your application for Injunctive relief in the Florida Court." May 27, 2014 Letter.

APR, FEG, and GECOL are parties."). In addition to the correspondence from Defendants' counsel discussed above, evidence submitted with Defendants' Preliminary Injunction Response further shows that at the time FEG initiated the Libyan Proceeding, FEG believed that it was Plaintiff APR that had entered into the contract with GECOL, and for this reason, named APR in the Libyan Proceeding.[17] With the Preliminary Injunction Response, Defendants submitted a letter dated May 20, 2014, from Defendants' counsel to the Secretariat at the International Chamber of Commerce, initiating the arbitration proceedings. In the letter, counsel for Defendants asserts that Defendants and "APR Energy LLC", which is identified as the "Respondent" in the arbitration, entered into the Services Agreement which required APR to pay Defendants 8% of the funds received by APR from the customer (the customer being identified as GECOL). See May 20, 2014 Letter at 1-2 (Doc. 15-2). She further asserts that on March 14, 2013, GECOL signed a contract (defined in the letter as "the Contract") with Respondent APR, that Respondent APR has acknowledged receiving $100,000,000 from GECOL, and that Respondent APR has failed to pay Defendants as required by the Services Agreement. See id. at 3. Based on these allegations, in the arbitration, Defendants seek "8% of any sums paid to Respondent [APR] by GECOL

---

[17] The arguments of counsel are not evidence. Nevertheless, the Court notes the conflicting assertions regarding Defendants' knowledge. At the Motion Hearing, counsel for Defendants argued that at the time of filing the Libyan Proceeding, "they thought money had been paid to PLC. They didn't know the basis - the contractual basis for it." Motion Hearing Tr. at 10. However, he also acknowledged that at the time of filing, FEG did not know of the other APR entities:

> THE COURT: Mr. Hodkin, what filing did you-all submit where you said We got it wrong? The contract was with this other entity.
> MR. HODKIN: We said we did not know that there was PLC, there was Holdings. We were concerned that there had been a fraudulent transfer . . ."

Id. at 11.

pursuant to the terms of the Contract (including the Addenda) . . ." and a "declaration that [FIGCorp and FEG are] entitled to 8% of all sums paid by GECOL to [APR] pursuant to the terms of Contract 03/13 and the Addenda." Id. at 6.  These allegations made in the arbitration application letter are consistent with the strict terms of the Services Agreement which appears to require APR to pay Defendants upon receipt by APR of money from GECOL.[18]  Further, they unequivocally reflect FEG's belief, as of May 20, 2014, just days before filing the Libyan Proceeding, that GECOL contracted with APR, that GECOL paid APR, and that GECOL owed further sums to APR which FEG believed were owed in part to FEG.

Defendants also present a "true and correct copy of the application, and a translation of the application" filed in the Libyan Proceeding.  See Preliminary Injunction Response ¶ 12.  In Defendants' translation of FEG's application to the Libyan court, FEG, as the "applicant," files the application against the legal representative of "APR Energy Ltd." which is labeled "the first applied against," and against "the legal representative of the General Electricity Company," which is labeled "the second applied against."  See Libyan Application at 5.  FEG states that the "first applied against" [the APR entity] is "licensed to carry out installation, development, and operating [sic] electrical power stations"[19] and that the second applied against [GECOL] "is a Libyan company contracted with the first applied against for

---

[18] In making this observation, the Court makes no finding as to proper construction of the Services Agreement or the rights or liabilities of the parties to the Services Agreement.  Such matters are for resolution in the arbitration proceeding only.

[19] In the Services Agreement, Plaintiff APR is identified as "developing and operating energy generating plants and providing electrical power to retailers or end consumers of electric power."  Services Agreement at 1.

establishing of [sic] power stations, and the supplying of power." Id. at 6. FEG goes on to

describe the relationship between itself as the applicant and the "first applied against" [the

APR entity] as one arising from a contract signed in January, 2013, the Services Agreement.

Id. Further, FEG asserts that the "first applied against" [the APR entity] and the "second

applied against" [GECOL] entered into a contract "for the installation of electrical power

stations" and that "the first applied against [the APR entity] has received from the second

applied against [GECOL] . . . more than 100 million U.S. dollars" yet "has not paid nor . . .

fulfilled its obligations (payment of fees)" to FEG. Id. at 7-8. In claiming that the "first

applied against" [the APR entity] has not fulfilled its obligations of payment to FEG, FEG

specifically relies upon the Remuneration provision of the Services Agreement which FEG

attaches to the Libyan Application and to which only APR, FEG and FIGCorp are

signatories. See id. at 8-9.[20] Further, FEG claims that it "fears the loss of its dues with the

first applied against" [the APR entity] and cites to Libyan law in requesting an order "placing

a precautionary hold on the belongings of APR Energy in the possession of the General

Electricity Company for the amount representing 8% of all the values of contracts to be

---

[20] Within the Services Agreement, APR Energy, LLC, is referred to as "APR," FEG and FIGCorp
are referred to as the "Service Provider," and GECOL is referred to as the "Customer." See Services
Agreement at 1. The Remuneration provision states, in relevant part,

   1. As full compensation for the Services duly rendered pursuant to this Agreement, APR
   shall pay the Service Provider an amount equal to 8% of the actual amount paid to APR
   by the Customer, which shall be payable in installments fifteen (15) business days after
   APR receives payment from Customer, subject to the following conditions precedent:

   A.      APR has provided an invoice to Customer; and

   B.      receipt of payment of such invoice from Customer by APR.

Id. at 17.

executed with GECOL for the benefit of F.E.G." Id. at 9-10.  Thus, the Libyan Application

presents a claim by FEG against a single APR entity based solely on the Services

Agreement in which only APR is named and reflects FEG's belief that this same APR entity,

the Plaintiff APR, contracted with GECOL, has been paid by GECOL, and is owed further

sums by GECOL that FEG believes should be held for FEG's benefit.  Nothing in this

application suggests that FEG is suing a different APR entity because that is the entity that

actually entered in to the contract with GECOL or that a different entity was due further sums

from GECOL.  Indeed, nowhere does FEG attempt to suggest a factual or legal basis to

obtain a hold on monies owed to an APR entity with whom FEG has no relationship.[21]  The

Libyan court thereafter ordered "placement of [sic] precautionary hold on APR's dues with

GECOL, as fulfillment of the debts of the plaintiff company representing 8% of the one

hundred million US dollars paid to APR."  See Libyan Order (Doc. 15-4).

Further evidence that FEG named APR in the Libyan Proceeding is found in the

affidavit of Albudery Shariha (Shariha), APR's Libyan counsel, who attests,

> I have reviewed the file kept and maintained by the North Tripoli Court of First
> Instance (the "Libya Court") in legal proceedings that First Engineering Group
> ("FEG") commenced in the Libya Court against APR Energy, LLC ("APR"),
> and General Electricity Company of Libya ("GECOL") and am otherwise
> familiar with those proceedings (the "Libyan Proceeding").  I am counsel of
> record for APR in the Libyan Proceeding.

---

[21] FEG filed both the Libyan Proceeding and the arbitration proceeding.  Certainly the
representations by FEG's lawyers in those actions are strong evidence as to who FEG actually named
and who FEG believed to have contracted with and been paid by GECOL.

Declaration of Albudery Shariha dated July 31, 2014 ¶ 2 (Doc. 29-2, Exhibit B; 7/31/2014 Shariha Decl.).[22]  Shariha further explains that in its application to the Libyan court, FEG alleges a dispute between it and APR regarding money that FEG claims it is owed under its contract with APR.  Id. ¶¶ 3-4.[23]  Shariha also explains that "FEG does not allege that it has any contract or business relation with GECOL" but that FEG "instead claims that GECOL owes money to APR pursuant" to what FEG contends is "APR's contract with GECOL."  Id. ¶ 3.

Additionally, a review of the affidavit of Defendants' counsel further supports the conclusion that at the time FEG filed the Libyan Proceeding, FEG named APR.  See Dallas Aff. ¶¶ 12.  By August 1, 2014, 2 1/2 months after submitting the arbitration letter in which she specifically attested that APR contracted with GECOL, Dallas had apparently come to believe that APR Energy PLC, not APR, was the APR entity that entered into the contract with GECOL.  Nevertheless, she does not assert that FEG actually filed the Libyan Proceeding against APR Energy PLC.  Instead, she explains the following based on her personal knowledge:

> With regards to the application in Libya, the principal reasons for making this application was that (a) the debt owed by **APR Energy, LLC ("APR")** to FIG/FEG is just, due, and unpaid; (b) the garnishment was not sought to injure APR, or the garnishee, GECOL; (c) for reasons explained

---

[22] In an earlier affidavit, Shariha states that he has "reviewed the file in the legal proceedings that First Engineering Group ("FEG") commenced in the North Tripoli Court of First Instance against APR Energy ("APR"), and General Electricity Company of Libya ("GECOL") (the "Libyan Proceeding")." Declaration of Albudery Shariha dated June 10, 2014 ¶ 2 (Doc. 16-2, Exhibit 2; 6/10/2014 Shariha Decl.).

[23] In his June 10, 2014 affidavit, Shariha similarly asserts that "FEG's request for relief in the Libyan Proceeding concerns its assertion that APR has an outstanding debt for services provided to APR" and that "FEG requested, and was granted, a provisional attachment for $8,000,000 (U.S.) that GECOL owes to APR."  6/10/2014 Shariha Decl.¶ 3.

> below, FIG/FEG have a genuine belief that APR will not have in its possession, after execution is issued, tangible or intangible property in this state and in the country in which the action is pending on which a levy can be made sufficient to satisfy the plaintiff's claim; and (d) APR had instructed FIG/FEG not to make contact with GECOL, and APR did not report to FIG/FEG payments to APR from GECOL upon which commissions were due to FIG/FEG.

Dallas Aff. ¶ 3. In making these assertions, Dallas was addressing FEG's right under Section 10(h) of the Services Agreement to seek prejudgment relief under Florida law in Libya against APR outside of arbitration. See Defendants First Investment Group Corporation and First Engineering Group's Supplement to Verified Response Opposing Plaintiff's Motion for Preliminary Injunction at 2-3 (Doc. 28; Supplemental Preliminary Injunction Response). Indeed, despite expressing the belief that APR Energy PLC was the true party to the GECOL contract, she does not assert that FEG named this other APR entity in the Libyan Proceeding and Defendants did not argue that APR Energy PLC or any other APR entity was the party FEG named in the Libyan Proceeding. See generally id. Instead Defendants argued, amongst other things, that they were permitted to pursue prejudgment relief against APR under Section 10(h) of the Services Agreement and that APR could not satisfy the requirements to seek injunctive relief under this same provision of the Services Agreement. See id. at 2-4.

> Further, in her affidavit Dallas states:
> In January 2014, FIG/FEG learned from the APR website and press release that $100,000,000 had been paid to APR. APR has not paid any of these monies to FIG/FEG, although APR is contractually obliged to do so, nor did APR even notify FIG/FEG of the payment of those monies to APR by GECOL. It is quite apparent from APR's conduct and surreptitiously hiding the fact of payment that APR had no intention of living up to the Service Agreement, and that it intends to "stiff" FIG/FEG.

. . .

> A copy of the APR press release was produced to the Court as the basis for FIG/FEG's claim for attachment garnishment of $8,000,000 in GECOL's account.

Dallas Aff. ¶¶ 14, 17.   Notably, in her affidavit, Dallas specifically indicates that her references to Plaintiff APR Energy LLC are denoted as "APR."  Id. ¶ 3. Nothing in Dallas's Affidavit suggests as a factual matter that at the time FEG filed the Libyan Proceeding it knew of, named, or intended to name any party other than APR, the party with whom FEG contracted in the Services Agreement.

Finally, the Court observes that if FEG was aware at the time it initiated the Libyan Proceeding that a party other than APR was the true party to the GECOL contract, and actually named that party in the Libyan Proceeding, FEG has provided no explanation for its allegation that the "first applied against" was both the party that contracted with GECOL and the party indebted to FEG under the Services Agreement.

Upon review of the record in this action, the Court concludes that the evidence clearly establishes that at the time FEG filed the Libyan Proceeding, FEG named APR.   FEG named the party with whom it contracted in the Services Agreement.   The Services Agreement provides that FEG is to be paid upon payment to APR by GECOL.   In its correspondence to APR, the correspondence initiating the arbitration proceedings and the Libyan Application, FEG expresses its belief that APR contracted with GECOL, has been paid by GECOL, and has failed to pay FEG.   These documents also reflect that FEG instructed its counsel to file the Libyan Proceeding against APR and GECOL to prevent payment of any further sums by GECOL to APR.   FEG believed the parties to the GECOL contract were APR and GECOL.   For this reason, FEG filed the Libyan Proceeding and

named as parties to the action GECOL and APR.  Thus, the Court determines that the parties named in the Libyan Proceeding are, just as Defendants argued in the Preliminary Injunction Response, FEG, APR, and GECOL.  As such, the Court's conclusion that APR Energy PLC was named in the Libyan Proceeding, a finding supported by no evidence but rather only by a single statement of counsel, was manifestly erroneous.  Identification of the parties named in the domestic and foreign actions is necessary to the determination of whether a party seeking an anti-suit injunction has satisfied the first threshold requirement - the identity of parties.  See Canon Latin Am., Inc. v. Lantech (CR), S.A., 508 F.3d 597, 601 (11th Cir. 2007).  Thus, the Court's prior analysis of APR's entitlement to an anti-suit injunction was based on a manifest error of fact which must be corrected.  In light of this determination, the Court will grant Defendants' Motion and reconsider its resolution of the claim for an anti-suit injunction raised in this action.  In doing so, the Court determines that the September 29, 2014 Order is based, in part, on a manifest error of fact, and therefore, will vacate the Order and accompanying judgment and enter a corrected order and judgment which properly reflect and consider the evidence presented.

In concluding that APR, GECOL, and FEG are the parties to the Libyan Proceeding, the Court recognizes that the Libyan court issued an injunction which, having been served on GECOL, had the effect of causing GECOL to withhold payment of sums due to be paid not to APR, but to a different APR entity.  This fact appears to cause the parties to contend that the party to the GECOL contract is the APR entity named in the Libyan Proceeding. However, the Court does not view the effect of the Libyan injunction as being dispositive of the identification of the parties actually named and the claims raised in the Libyan

Proceeding.  Nevertheless, in reconsidering APR's entitlement to an anti-suit injunction, the Court will address the possibility that the entity with whom GECOL contracted should be considered a party to the Libyan Proceeding, and the effect of its presence.

In the Motion, Defendants also seek a stay of the September 29, 2014 Order pending appeal.  In light of the Court's determination that the September 29, 2014 Order is due to be vacated, the Court will deny the request for a stay pending appeal and will deny as moot APR's Motion for Contempt of Court, for Coercive Monetary Sanctions, Expedited Hearing and Related Relief for the FIG/FEG Parties' Violation of the Final Injunction (Doc. 37). Accordingly, it is hereby

**ORDERED:**

1.    Defendants' Amended Motion for Stay Pending Appeal and/or for Reconsideration (Doc. 40) is **GRANTED** to the extent that the Court reconsiders its September 29, 2014 Order.

2.    The Court's September 29, 2014 Order (Doc. 33) and Judgment (Doc. 34) are **VACATED**.

3.    In all other respects, the Motion (Doc. 40) is **DENIED**.

4.      APR's Motion for Contempt of Court, for Coercive Monetary Sanctions, Expedited Hearing and Related Relief for the FIG/FEG Parties' Violation of the Final Injunction (Doc. 37) is **DENIED as moot**.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of February, 2015.

**MARCIA MORALES HOWARD**
United States District Judge

lc18

Copies to:

Counsel of Record